**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.L.-1 and C.L.-2**

**No. 23-57** (Hampshire County CC-14-2021-JA-57 and CC-14-2021-JA-58)

**MEMORANDUM DECISION**

Petitioner Mother E.F.[1] appeals the Circuit Court of Hampshire County's December 8, 2022, order terminating her parental rights to C.L.-1 and C.L.-2,[2] arguing that termination was improper because she substantially complied with the terms of her improvement period. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In March 2021, police were dispatched to petitioner's home due to reports of shots being fired. Petitioner allegedly pulled out a gun and pointed it at the children's father. The father struggled with petitioner to take the gun, and a shot was fired into the bedroom floor. Both C.L.-1 and C.L.-2 were present; one child saw the struggle while the other child called 9-1-1. By the time police arrived, petitioner had fled the residence. She was later arrested and charged with felony wanton endangerment. A Child Protective Services worker interviewed the children, who both reported similar accounts of the shooting and reported fear that petitioner would be released on bail. The children also reported that petitioner had been acting erratic for several months prior to the shooting. Additionally, petitioner admitted to using methamphetamines for one month prior to

---

[1]Petitioner appears by counsel Jonie E. Nelson. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katica Ribel. Counsel Joyce E. Stewart appears as the children's guardian ad litem.

[2]Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the children share the same initials, we refer to them as C.L.-1 and C.L.-2, respectively.

1

the shooting. Based on the foregoing, the DHS filed an abuse and neglect petition alleging that petitioner abused the children.

In July 2021, petitioner voluntarily stipulated to "abusing and/or neglecting" the children by abusing controlled substances and to causing "emotional abuse and/or emotional trauma to the children and being a part of an incident that exposed the children to physical endangerment." Based on her stipulated conduct, the circuit court adjudicated petitioner as a neglectful and/or abusive parent. Petitioner moved for a post-adjudicatory improvement period, and the court granted the improvement period in February 2022. The terms of petitioner's improvement period required petitioner to complete parenting and adult life skills classes, participate in supervised visitation, participate in drug testing, participate in individual and family counseling, and complete anger management. Initially, the circuit court ordered visitation to begin after receiving a recommendation from the children's therapist. However, by the start of petitioner's improvement period, the children had not yet seen their therapist. The court again ordered for the children to attend counseling but allowed supervised visitation to begin immediately, by order entered on February 25, 2022.

In April 2022, the court held a review hearing, where the parties indicated that the supervised visits were not going well due to the children refusing to interact with petitioner. The court ordered that visitations cease until the parties convened at a multi-disciplinary team ("MDT") meeting to discuss how to move forward with visitation, as the visits were currently detrimental to the relationship between petitioner and her children. The court held another review hearing in June 2022, where the court was informed that only one family therapy session had been held. The court admonished the DHS for not providing sufficient counseling services, ordered that family therapy occur more than once a month, and ordered weekly visitation. The court granted a three-month extension to petitioner's improvement period in August 2022.

After further concerns about visitations and family therapy, the court conducted in-camera interviews with the children, who were eleven years old at the time, in October 2022. After the interviews, the court found that forcing the children to continue visitations with petitioner would result in further disruption in the home, as the children have "very deep seated" issues toward their mother and express a total indifference to restoring a relationship. Thus, the court suspended visitation, finding it was not in the children's best interest to force continued contact.

The court proceeded to disposition in November 2022. Evidence presented showed that petitioner had several recent positive drug tests, including one positive test for methamphetamine in October 2022 and twelve positive tests for alcohol between August 2022 and October 2022. Petitioner testified, admitting to some drinking but denying that she drank that often and explaining that she did not believe her alcohol use was a problem. She further denied using methamphetamine, explaining that her positive result must have come from the time she found methamphetamine in her belongings and touched it. The DHS worker testified that they discussed petitioner's alcohol use at an MDT meeting in September 2022 to inquire about possible rehabilitative services. However, petitioner declined assistance by saying that she did not have a drinking problem and that alcohol was not an issue.

Ultimately, the court found that the children had expressed fear of petitioner due to their exposure to domestic violence, that petitioner's minimization of her recent increased alcohol use was concerning for her sobriety, that her testimony regarding her positive methamphetamine screen was not credible, and that services and therapy had been unsuccessful in repairing the parent-child relationship. The court found that while some of the conditions of the improvement period were satisfied, there was not sufficient improvement in the context of all the circumstances to justify a return of the children; that there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the foreseeable future; and that termination of petitioner's parental rights was necessary for the children's welfare. Accordingly, the court terminated petitioner's parental rights to the children.[3] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, petitioner argues that, contrary to the circuit court's finding, she did substantially comply with the terms of her improvement period. The circuit court found that petitioner failed to maintain sobriety and failed to gain insight into her addiction and how it affects her children. Petitioner fails to explain how she substantially complied with maintaining sobriety when she tested positive for alcohol twelve times and tested positive once for methamphetamine in the three months leading up to the disposition hearing. Further, petitioner testified at disposition that she did not believe alcohol was a problem for her but could not explain why she was unable to remain sober during her improvement period. Petitioner is correct in asserting that she did complete some terms of her improvement period, and the circuit court recognized this in its order. However, we have explained that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (citation omitted). The circuit court's finding that petitioner did not successfully complete her improvement period is supported by the record, and we find no error.

Second, petitioner argues that the circuit court erred by terminating her parental rights. In support, petitioner argues that the circuit court prevented her from working on her bond with the children as required because the circuit court ended visitation and family therapy. However, petitioner admits on appeal that visits and family therapy were stopped due to the "children not participating in those visits and the visits . . . not going very well" and that the decision to suspend contact was "based on the desires of the children." Despite her admission, petitioner simply states that the circuit court should not have stopped the services because petitioner was acting appropriately, and that family therapy was a requirement of the case plan.

It was only after the circuit court received evidence, including testimony from the children, that visitation and family therapy were detrimental to the children's welfare that the court ordered visitation and therapy to be suspended. The circuit court's suspension of visitation and therapy is consistent with our well-established principle that the primary goal must be the welfare of the

---

[3]The father successfully completed his improvement period and regained custody of the children.

children. *See* Syl. Pt. 2, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." (citation omitted)). Accordingly, petitioner cannot be entitled to relief based on the court's suspension of these services. Further, because the court had ample evidence upon which to base the findings necessary for termination of petitioner's parental rights, we find no error. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood conditions of abuse and neglect can be substantially corrected in the near future and when necessary for child's welfare); *see also* Syl. Pt. 4, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011) ("[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened[.]" (citation omitted)).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 8, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: March 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

4